**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Forrest Shepard, as Trustee of the Bill N. Shepard Trust,<br><br>Plaintiff,<br><br>v.<br><br>Pishit S. Patel, and Does 1-10, inclusive,<br><br>Defendants. | No. CV-11-08146-PCT-NVW<br><br>**PRELIMINARY INJUNCTION**<br><br>**AND**<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Before the Court is Plaintiff's Motion to Appoint Receiver or, Alternatively, for Preliminary Injunction (Doc. 31). An evidentiary hearing on this Motion was held on November 6 and 7, 2012. After reviewing all the evidence and the arguments of counsel, the Motion will be denied in part and granted in part, and a preliminary injunction will issue.

**I.   FINDINGS OF FACT**

  **A.   The Parties**

   1.   Plaintiff, Forrest Shepard, is an individual and the Trustee of the Bill N. Shepard Trust.

   2.   Plaintiff is the successor-in-interest to Dr. Bill N. Shepard's one-third (1/3) interest in the Partnerships (defined below).

   3.   Defendant Pishit S. Patel ("Defendant") is an individual who owns the remaining two-thirds (2/3) interest in the Partnerships.

Case 3:11-cv-08146-NVW   Document 58   Filed 11/27/12   Page 2 of 10

**B.     The Partnerships**

4.     In or about January 1995, in the City of Needles, County of San Bernardino, State of California, Bill N. Shepard, Rama P. Patel ("Mrs. Patel"), and Defendant jointly purchased certain real property, commonly referred to as 1300 West McCulloch Blvd., Lake Havasu City, Arizona, including improvements thereon, and all fixtures, equipment and personal property thereon, and operating as a motel/hotel business under the name and style of Island Inn Resort.

5.     Bill N. Shepard, Mrs. Patel, and Defendant entered into an oral partnership agreement for the Island Inn Resort. Said partnership agreement included, but was not limited to, the following pertinent provisions: for said parties to carry on as a partnership the motel/hotel business, utilizing the Island Inn Resort, including maintaining, repairing, improving and holding for appreciation the Island Inn Resort. The partnership created by this agreement is referred to as the "Island Inn Partnership" herein.

6.     Bill N. Shepard, Defendant, and Mrs. Patel jointly purchased that certain real property, commonly referred to as 831 North Bill Williams Avenue, Williams, Arizona, including improvements thereon, and all fixtures, equipment and personal property thereon, and operating as a motel/hotel business under the name and style of Motel 6 West.

7.     In or about June, 1996, in the City of Needles, County of San Bernardino, State of California, Bill N. Shepard, Defendant, and Mrs. Patel entered into an oral partnership agreement for the Motel 6 West (the "Motel 6 West Partnership"). Said partnership agreement included, but was not limited to, the following pertinent provisions: said parties to carry on as a partnership the motel/hotel business, utilizing the Motel 6 West, including maintaining, repairing, improving and holding for appreciation the Motel 6 West. The Motel 6 West Partnership and Island Inn Partnership are referred to collectively as the "Partnerships."

- 2 -

8. In 1998, Dr. Shepard filed suit against Defendant and Mrs. Patel in California state court for declaratory relief, accounting, dissolution, fraud, and breach of fiduciary duty related to Defendant's alleged mismanagement of the properties.

9. In 2002, Defendant and Ms. Patel filed for Chapter 11 bankruptcy in Arizona; the then-pending litigation with Dr. Shepard was also removed to the bankruptcy court.

10. On November 29, 2007, the bankruptcy court issued its judgment, finding Dr. Shepard had a one-third partnership interest in both Motels and entering money judgment for Dr. Shepard against the Patels related to both properties.

11. The bankruptcy court also provided that a third-party management company, American Hospitality, Inc. ("American Hospitality"), would manage the properties until the money judgments for Dr. Shepard were paid, upon which time Defendant's management company, Rohan Management ("Rohan"), could resume management of the properties. Rohan is owned solely by Defendant. American Hospitality charged a management fee of 2.5% of gross revenue plus $400 a month for accounting and payroll services.

12. Bill N. Shepard died on July 3, 2008 and the Plaintiff acquired Bill N. Shepard's interests in the Island Inn Resort Partnership and the Motel 6 West Partnership.

13. On December 3, 2010, a divorce decree was entered in connection with the dissolution of marriage between Defendant and Mrs. Patel. As part of that divorce decree, Mrs. Patel's one-third interest in the Island Inn Partnership was awarded to Defendant.

14. On February 15, 2011, a final decree was entered and the administrative case in the bankruptcy matter was closed.

15. Plaintiff and Defendant continued the Partnerships, and Defendant's management company Rohan resumed managing the Motels following his satisfaction of the adversary proceeding judgment.

16. In March 2011, Defendant requested a cash contribution from Plaintiff to allegedly pay property taxes and other expenses related to the properties. Plaintiff did not respond to this request.

17. Defendant also requested Plaintiff provide information to a bank for a proposed refinancing of the loan on the Motel 6 West property. Plaintiff did not respond to this request.

18. After receiving these requests, Plaintiff, through his representatives, requested and was granted the right to inspect various books and records of the Partnerships and Motels located in Arizona in April 2011.

19. Plaintiff filed his complaint on September 16, 2011.

20. After the money judgments for Dr. Shepard ordered by the bankruptcy court were paid, Defendant's company, Rohan Management, began charging the Partnerships a management fee of 5% without Plaintiff's consent. Rohan Management later increased the management fee to 7%, again without Plaintiff's consent.

21. Defendant entered into a Franchise Agreement with Motel 6 for the Motel 6 West without Plaintiff's consent—referring to himself alone as the "franchisee" rather than the Motel 6 West Partnership. The Franchise Agreement identifies Defendant as "Pishit Patel, as a sole proprietor" and the "owner" of the Motel 6 property.

22. On October 1, 2011, Defendant entered into a Modification Agreement for a loan encumbering the Motel 6 West property without Plaintiff's consent.

23. Defendant, without Plaintiff's consent, has been using Island Inn Partnership assets to lease a 2011 Mercedes S550 for himself, to register that vehicle, to insure that vehicle, and to make repairs to additional Mercedes.

24. Island Inn Resort and Motel 6 West, the jointly owned properties managed by the Partnerships, have disbursed funds from the Partnerships to or for the personal benefit of the Defendant, Rohan, or other entities owned by the Defendant between 2008 and 2012 without the consent of Plaintiff.

25. The amount of recorded disbursements made by Island Inn Resort and Motel 6 West to Rohan due to the increase in the monthly management fees charged by Rohan through Island Inn Resort and Motel 6 West without the consent of Plaintiff from 2.5% previously charged by American Hospitality as of May 2008 to 5% charged by Rohan commencing June 2008 is $184,300 and then from 5% to 7% of revenues commencing January 2011 through July 2012 is $54,900, for a combined total of $239,200.

26. The amount of recorded disbursements made by Island Inn Resort and Motel 6 West to the Defendant for reimbursements to the Defendant for payments he purportedly made on behalf of the Partnerships between 2008 and 2012 without the consent of Plaintiff is at least $537,000.

27. Island Inn Resort and Motel 6 West disbursed funds in the amount of $160,000 from the Partnerships to Rohan for loans made by Rohan to both properties between 2008 and 2012, without the consent of Plaintiff.

28. The amount of recorded disbursements made by Island Inn Resort and Motel 6 West between 2008 and 2012 while under the management of Rohan where no supporting vendor invoices or vendor receipts could be located in the business records of Island Inn Resort and Motel 6 West, contrary to the record retention requirements of the Internal Revenue Service, is at least $177,686.

29. The amount of recorded disbursements made by Island Inn Resort and Motel 6 West between 2008 and 2012 while under the management of Rohan for which the supporting documents do not designate which hotel owed the bill, contrary to the record keeping requirements of the Internal Revenue Service, is at least $12,100.

## II. CONCLUSIONS OF LAW

### A. The Appointment of a Receiver is Inappropriate in this Case

Plaintiff first seeks appointment of a receiver to manage the Partnerships. "[A]ppointing a receiver is an extraordinary equitable remedy", which should be applied with caution. *Canada Life v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (citing *Aviation*

*Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)). The Court has discretion in determining whether to appoint a receiver, it may consider all relevant factors, and no one factor is necessarily dispositive. *See, e.g., Canada Life*, 563 F.3d at 845. Defendant has self-dealt in this case. But depending on the nature of a business, a receiver can also be detrimental to a business requiring proactive skillful management. In this case and in light of the short time between now and the expected dissolution of the Partnerships and/or partition of the real properties, there is greater danger to the value of the Partnerships with the appointment of a receiver than with continued management by Rohan. For these reasons, Plaintiff's request for the appointment of a receiver will be denied.

### B. A Preliminary Injunction Should Issue to Protect the Partnerships' Property and Assets

In the alternative, Plaintiff seeks a preliminary injunction. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). To obtain a preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equity tips in his favor; and (4) the injunction is in the public interest. *Winter v. National Resources Defense Counsel*, 555 U.S. 7, 20 (2008). In this case, a preliminary injunction is appropriate to bring an end to Defendant's self-dealing without depriving the Partnerships of the benefit of Rohan's management.

A preliminary injunction properly issues in actions seeking dissolution and accounting of partnerships to maintain the status quo pending adjudication on the merits. *See Wind v. Herbert*, 186 Cal. App. 2d 276, 8 Cal. Rptr. 817 (1960); *Kendall v. Foulks*, 180 Cal. 171, 173-174, 179 P. 866 (1919). A fiduciary's commingling of partnership assets with personal assets raises a presumption of impropriety with respect to the commingled sums. *See, e.g.*, *Hurst v. Hurst*, 1 Ariz. App. 603, 607, 405 P.2d 913, 917 (1965). Here, Defendant has made numerous self-interested disbursements of the

Partnerships' assets to or on behalf of himself or to his company, Rohan Management, that were neither disclosed to, nor approved by, Plaintiff. To prevent any further improper disbursements of partnership assets and to ensure an accurate accounting at the time of trial, a preliminary injunction is appropriate and necessary.

### C. Plaintiff Is Likely to Succeed on the Merits

It is likely that Plaintiff will prevail on his claims of accounting and dissolution and breach of fiduciary duty in this action. It is a near certainty that the Partnerships will be dissolved in this lawsuit, as both Plaintiff and Defendant request this relief. Plaintiff is therefore likely succeed on his claim for accounting and dissolution.

Additionally, Plaintiff is likely to succeed on his claim that Defendant has breached his fiduciary duties to the Partnerships. Where a fiduciary commingles partnership assets with personal assets, the entire commingled mass is treated as partnership property except so far as the fiduciary may be able to distinguish what is separately his. *Hurst*, 1 Ariz. App. at 607, 405 P.2d at 917. Moreover, "absent an express agreement, a partner is not entitled to any compensation for his services to the partnership other than his share of the profits." *Wind*, 186 Cal. App. 2d at 286, 8 Cal. Rptr. at 817. Indeed, a partner must fully disclose all material facts relating to partnership affairs, and the commingling of partnership property with a partner's own property gives rise to a presumption that the entire commingled mass is partnership property. *Ohaco Sheep Co., Inc. v. Heirs of Ohaco,* 148 Ariz. 142, 145, 713 P.2d 343, 346 (1986); *Hurst*, 1 Ariz. App. at 606-07, 405 P.2d at 916-17. There is no express agreement in the Partnerships for any compensation to Defendant other than his pro rata share of the profits. It is likely that some other agreement for management fees to Defendant will be proven, as the partnerships had a course of performance involving such payments. But the amount of such payments was changed by Defendant without knowledge of Plaintiff. Some substantial part of those payments are likely self-dealing in breach of Defendant's fiduciary duty to the Partnerships. In addition, there has not been any fair allocation of the costs of Defendant's Mercedes to the other properties that he

manages. Further, with respect to Rohan's management fee, there has been double payment. Defendant has disbursed the Partnerships' assets to Rohan through a 7% gross management fee in addition to using the Partnerships' assets to pay Rohan's expenses.

Under Arizona partnership law, the authorization or ratification of all partners (or a lesser number or percentage only where specified in a partnership agreement, which does not exist in this case) is necessary to "authorize or ratify an act or transaction that otherwise would violate a fiduciary duty of a partner." A.R.S. § 29-1034(H). Here, Defendant failed to apprise Plaintiff of the self-interested distributions and never obtained Plaintiff's authorization or consent. Accordingly, Plaintiff is likely to succeed on the merits of his claim for breach of fiduciary duty.

### D. **Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief**

Continued self-dealing by Defendant, through disbursements to himself and related persons and entities, will cause irreparable harm to Plaintiff and the Partnerships in the absence of injunctive relief. This conduct dissipates the Partnerships' assets to the detriment of an accurate accounting and proper dissolution and wind-up. Defendant is also not maintaining records in compliance with IRS standards, which is a grave threat to the financial interest of all partners. A preliminary injunction is appropriate to avoid irreparable harm to the Partnerships' assets.

### E. **The Balance of Equities Tips in the Plaintiff's Favor**

The balance of equities tips strongly in favor of issuing a preliminary injunction to preserve the status quo in this case. In the context of provisional remedies, such as preliminary injunction, the issue in evaluating the balance of hardships raised "is the degree of harm that will be suffered by the plaintiff or defendant if the injunction is *improperly* granted or denied." *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 284 (4th Cir. 2002). Here, an injunction should have little adverse impact on Defendant, as it would ensure only proper, non-self-interested disbursements of the assets of the Partnerships. Conversely, Plaintiff is likely to suffer harm if an injunction is not issued

because Defendant would continue to dissipate the Partnerships' assets pending a final resolution. Accordingly, the balance of equities tips strongly in favor of issuing a preliminary injunction.

### F. A Preliminary Injunction Is in the Public Interest

There is public interest in issuing preliminary injunctions to maintain the status quo for claims of accounting and dissolution of partnerships. See *Wind*, 186 Cal. App. 2d 276, 8 Cal. Rptr. 817. Where an injunction's reach is narrow and affects only the parties—with no impact on nonparties—"the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). The injunction in this case would enjoin only Defendant from making self-interested disbursements, and thus would not affect third parties. As a result, the public interest is either in favor of, or neutral to, enjoining Defendant.

### III. BOND

A preliminary injunction must be conditioned on the plaintiff posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the bond is within the Court's discretion. *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005). A bond will be required in the amount of $5,000.00.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Appoint Receiver or, Alternatively, for Preliminary Injunction (Doc. 31) is DENIED as to the request for appointment of a Receiver and GRANTED as to the request for a Preliminary Injunction.

IT IS FURTHER ORDERED that Defendant, Pishit Patel, is enjoined during the pendency of this litigation, or until further order of this Court, from doing any of the following:

    a. Making payments, in any form, to himself or to Rohan or for the benefit of himself or Rohan from the funds or deposits of the Partnerships without the

express prior written consent of Plaintiff, except for a management fee to Rohan up to 5% of gross receipts;

        b.      Depositing the receipts of the Partnerships in a new bank account other than any account currently maintained or operated by or for the Partnerships;

        c.      Paying from the Partnerships' assets any expenses of Rohan or any amounts for wages of persons that are not exclusively working on behalf of the Partnerships.

IT IS FURTHER ORDERED that Defendant maintain the records of the Partnerships in accordance with Generally Accepted Accounting Principles and in compliance with the standards of the Internal Revenue Service during the pendency of this matter or until further order of this Court.

This preliminary injunction is conditioned upon Plaintiff posting a bond in the amount of $5,000.00 pursuant to Federal Rule of Civil Procedure 65(c).

Dated this 26th day of November, 2012.

_____
Neil V. Wake
United States District Judge